MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:    (310) 271-6223
Facsimile:    (310) 271-9805
E-mail:    michael.berger@bankruptcypower.com

*Proposed* Counsel for Debtor and Debtor-in-Possession,
Spectrum Link, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SPECTRUM LINK, INC.,<br><br>Debtor and Debtor-in-Possession. | CASE NO.: 2:21-bk-16403-VZ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES AND RELATED EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARILYN M. ADJANGBA IN SUPPORT THEREOF**<br><br>[LBR 2081-1 and LBR 9075]<br><br>Hearing Scheduled For:<br>Date:   August 17, 2021<br>Time:   1:00 p.m.<br>Place:  Courtroom 1368 **[remotely via phone]**<br><br>Follow Judge Zurzolo's Appearance by Phone Procedures at https://www.cacb.uscourts.gov/judges/honorable-vincent-p-zurzolo.<br><br>Toll-Free Conference Line: (877) 411-9748<br>Passcode: 5919677 |

**TO THE HONORABLE VINCENT P. ZURZOLO, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA, THE**

**OFFICE OF THE UNITED STATES TRUSTEE, TO THE SECURED CREDITORS, TO THE TWENTY LARGEST UNSECURED CREDITORS, AND TO ALL OTHER INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

Spectrum Link, Inc., the Debtor and Debtor-in-Possession ("Debtor") will and hereby does move this Court on an emergency basis for an order authorizing it to issue payments of pre-petition wages and related expenses (collectively, "Employees' Compensation") for the payroll period of July 25, 2021 to August 8, 2021[1] due on August 16, 2021, and also seeks approval for August 9, 2021 – August 11, 2021 pre-petition days, which payroll will be issued on August 31, 2021 (the "Motion").

**PLEASE TAKE NOTICE** that the hearing on the Motion will take place on August 17, 2021 at 1:00 p.m. in Courtroom 1368 of the above-referenced Bankruptcy Court. Appearances may be made in person or telephonically. See Judge Zurzolo's telephonic appearance procedures on the first page of the Motion.

**PLEASE TAKE FURTHER NOTICE** that any opposition to the Motion is due no later than 11:00 a.m. on August 17, 2021.

This Motion is made on the basis of the Motion, the Declaration of Marilyn M. Adjangba, the memorandum of points and authorities, and on such other evidence as the Court elects to consider prior to or at the hearing on this matter.

**WHEREFORE**, the Debtor prays that the Court enter an order granting the relief requested above, and such additional relief as the Court deems just and proper.

Dated: 8/16/2021

LAW OFFICES OF MICHAEL JAY BERGER

By: _[signature]_
Michael Jay Berger
*Proposed* Counsel for Debtor and Debtor-in-Possession, Spectrum Link, Inc.

---

[1] August 9, 2021 – August 11, 2021 pay period also falls pre-petition, but the payroll covering the week of August 9, 2021 – August 23, 2021 will be issued on August 30, 2021.

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES AND RELATED EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARILYN M. ADJANGBA IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Spectrum Link, Inc. ("Debtor") pays the payroll obligations to its (5) employees on a bi-weekly basis. None of these five employees are insiders of the Debtor. Debtor seeks approval for the payroll period of July 25, 2021 to August 8, 2021[2] due on August 16, 2021 for the hourly employees, and pre-petition period of August 1, 2021 to August 15, 2021 for the salaried employees. Debtor also seeks approval for August 9, 2021 – August 11, 2021 pre-petition days for the hourly employees, which payroll will be issued on August 31, 2021. The total gross sum to be paid to the five (5) employees is $8,248.62. Attached to the Declaration of Marilyn M. Adjangba (the "Adjangba Decl.") as **Exhibit-1** is a spreadsheet of all of the Debtor's employees and the information for the wages owed for the pre-petition period subject to this Motion. In order to maintain employees' morale, prevent employees from quitting, and facilitate a successful reorganization, the Debtor recognizes the need to be able to pay the employees' compensation and pre-petition expense reimbursement requests, if any. The Debtor believes that failure to timely pay its Employees' Compensation will adversely affect its ability to retain its employees and to operate its business, and thereby frustrate its efforts to reorganize.

Thus, without this Court's granting its approval of this Motion, the Debtor will lack authority to make any payments to the workers for Employees' Compensation, which was earned and accrued pre-petition by the employees. Procedural authorization for an emergency hearing on the Motion is found in Local Bankruptcy Rules 9075 and 2081-1. The Debtor respectfully submits that, on the facts of this case, emergency relief is both necessary and appropriate such that the Debtor's employees can get compensated for the work done pre-petition.

By this Motion, Debtor seeks authority for payment of the Employees' Compensation on the following terms and conditions:

---

[2] August 9, 2021 – August 11, 2021 pay period also falls pre-petition, but the payroll covering the week of August 9, 2021 – August 23, 2021 to hourly employees will be issued on August 30, 2021.

1. Debtor will pay the Employees' Compensation only to the extent of the $13,650.00 priority limit per employee provided by Sections 507(a)(4) and 104 of the Bankruptcy Code. An estimate of such wage claims is attached as **Exhibit "1"** to the Adjangba Declaration.

2. The Employees' Compensation will be paid to Employees who continue to be employed by Debtor as of the date of the hearing on this Motion.

Debtor believes that paying the Employees' Compensation as described hereinabove is necessary to protect and preserve Debtor's business and will not impair the rights of any creditors in the case.

## II. GENERAL BACKGROUND FACTS

### A. General Description of the Debtor

Spectrum Link, Inc. was started in October 2013 by Bernard S. Mayfield, who passed away in April 2021 from Covid-19. Debtor is a leading internet service provider that offers custom internet services throughout the country, including unique temporary broadband service to those requiring temporary internet connections. It also provides installation services in many of the places that "wired" providers cannot reach, and its superior broadband service is backed by the fact installation process and copper-free wireless infrastructure. Debtor offers its customers a 24/7 care. Spectrum Link offers registered broadband link-owners 100% independent ownership of their broadband license, links and equipment.

### B. Events Precipitating the Chapter 11 Bankruptcy Filing

The major event that precipitated the filing of Debtor's Chapter 11 bankruptcy case was the passing of Mr. Mayfield in April 2021, as a result of which the Debtor's operation was negatively impacted, resulting in Debtor's inability to pay the monthly obligations to various tower owners pursuant to the licensing agreements, the monthly obligations for the office space, among others.

///

///

### C. Prospects of Reorganization

The Covid-19 pandemic has negatively impacted the country's economy and devastated certain sectors of the economy. Debtor's operations have been impacted by the pandemic as well. Debtor's principal, Mr. Mayfield passed away in April 2021 from Covid-19. However, Debtor is confident that it can emerge as a reorganized Debtor. It has a number of contractors lined up and is confident that it can obtain more contracts to generate the funds necessary to propose a feasible reorganization plan.

## III. ARGUMENT

### A. This Court Is Authorized To Allow The Debtor To Pay The Employee Compensation

Section 105(a) of the United States Bankruptcy Code empowers the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. §105. The basic purpose of Section 105(a) is "to enable the court to do whatever is necessary to aid in its jurisdiction, in anything arising in or relating to a bankruptcy case." 2 Collier on Bankruptcy ¶ 105.02 at 105-4 (15th ed. 1988). Essentially, Section 105(a) codifies the bankruptcy court's inherent equitable powers. *See, In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985).

> Section 507(a)(4) of the Bankruptcy Code provides, in pertinent part, as follows:
> (a) The following expenses and claims have priority in the following order:...
> (4) Fourth, allowed unsecured claims, but only to the extent of $12,475 [now $13,650.00] for each individual ... earned within 180 days before the date of the filing of the petition ... for--
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;

11 U.S.C. § 507(a)(3).

As set forth above, Section 507(a)(4) affords priority status to unsecured claims for wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual within 180 days before the filing of a bankruptcy petition to the extent of $13,650.00 for each such individual.

Case 2:21-bk-16403-VZ    Doc 10    Filed 08/16/21    Entered 08/16/21 16:15:01    Desc
Main Document    Page 6 of 15

Bankruptcy courts have authorized debtors to pay pre-petition priority wage claims as a means of allowing debtors to maintain their work force and thereby preserve the debtor's ability to operate in the ordinary course, without the disruption of employee defections.

> "In the early days of this case, the court entered orders permitting the post- petition payment of certain pre-petition wage and wage-related claims. As is often the case in operating Chapter 11 cases, the court did this for two reasons. First, it was necessary that Braniff pay its employees for work performed pre-petition if the employees were to remain on the job post- petition. The filing of a bankruptcy case presents many uncertainties for employees. If their pay is interrupted, employees are obviously not going to remain on the job despite the fact that their continuation in place is vitally important for the debtor.
> Second, in any event, the pre-petition wages are subject to the priority of Section 507(a)(3). Thus, in all but the direst of circumstances, the debtor will ultimately pay the pre-petition wages because of their very high priority. Accordingly, the court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case."

*In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr.M.D.Fla. 1998). *See also Columbia Gas*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); *In re Lehigh & New England Ry. Co.*, 657 F. 2d 570, 581 (3rd Cir. 1981); *Ionosphere Club*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989). *In re Structurlite Plastics Corp.*, *(Structurlite I)* 86 Bankr. 922, 932 (Bankr. S.D. Ohio 1988), citing *In re Chateaugay Corp.*, 80 Bankr. 279, 287 (S.D.N.Y. 1987); *See also In re Columbia Packing Co.*, 35 Bankr. 447 (Bankr. D. Mass. 1983).

> "Because wages are priority claims, courts have often permitted debtors to pay prepetition wage claims in the ordinary course in response to a motion filed by a debtor in possession at the commencement of a chapter 11 case. The ability to ensure that the employees receive their unpaid prepetition salary and do not miss a paycheck is critical to obtaining the stability necessary for the transition to operating as a debtor in possession."

Collier on Bankruptcy - 15th ed. Revised, ¶ 507.05[1] (2000).

The authority to make such payments was recognized by the Ninth Circuit in *In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir. 1987):

> "[A]nother "fundamental tenet"--rehabilitation of debtors, which may supersede the policy of equal treatment. Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to

6

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES AND RELATED EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARILYN M. ADJANGBA IN SUPPORT THEREOF

providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts. *See* Ordin, Case Comment, *In re Texlon Corporation*, 596 F.2d 1092 (2d Cir.1979): Finality of Order of Bankruptcy Court, 54 Amer.Bankr.L.J. 173, 177 (1980). … [I]t illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation."

*Adams Apple*, 829 F.2d at 1490.

In this case, without an order of this Court authorizing the Debtor to pay the pre-petition Employees' Compensation, there will be a severe risk that employees will leave the Debtor, thereby jeopardizing the Debtor's ability to maintain its operations and reorganize its financial affairs.

### B. Debtor's Relief is Justified on LBR 9075-1(a) and LBR 2081-1

"[11:391] ***PRACTICE POINTERS:*** Critical Workers may leave unless they are paid on a regular basis. Thus, unless the motion is promptly filed and granted, the DIP's continued operations may be at risk. Consider the following:

• ***Coordinate petition filing with payroll due date:*** Time commencement of the bankruptcy case so that it is filed immediately after the workers are paid their weekly/biweekly wages. Or, have the debtor issue a special payroll so that all prepetition wages are paid on the filing date.

• ***Request prepetition payroll checks to be honored by banks post-petition:*** Where workers were paid prepetition wages by prepetition checks that have not been cashed by the time the case is filed, move the court for an order that the DIP's bank may honor the checks *postpetition*."

Cal. Prac. Guide Bankruptcy Ch. 11-B.

Furthermore, pursuant to Local Bankruptcy Rule 2081-1(a)(6), the Motion must be supported by evidence that establishes: (A) The employees are still employed; (B) The necessity for payment; (C) The benefit of the procedures; (D) The prospect of reorganization; (E) Whether the employees are insiders; (F) Whether the employees' claim are within the limits established by 11 U.S.C. § 507; and (G) The payment will not render the estate administratively insolvent. Debtor addresses each of these factors if not previously discussed above.

### (a) Employees are Still Employed

All the employees that are identified on Exhibit "1" are still employed by the Debtor.

### (b) The Necessity of the Payment and (c) The Benefit of the Procedures

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES AND RELATED EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARILYN M. ADJANGBA IN SUPPORT THEREOF

As the Adjangba Declaration establishes, Debtor depends on its staff to carry on the day-to-day operations of the Debtor who in turn rely on the Debtor to support themselves and/or their families and are unlikely to continue working for the Debtor, if not paid. The Debtor's business is run, managed, and operated by its employees at the present time. These employees help with the day-to-day operation of the business, which includes providing installation and supervision labor. These employees are an essential part of the Debtor's day-to-day operation. Without them, the Debtor cannot operate.

It is the Debtor's opinion that payment of pre-petition wages is necessary to enable the workers to pay their personal living expenses, and to retain their goodwill and prospective services. In contrast, if such wages are not immediately paid, the Debtor believes that some of the employees will terminate their employment with the Debtor and seek other employment opportunities. If this occurs, revenue levels will decline precipitously, especially if the Debtor's employees quit, reducing the value of the estate's assets and impairing the rights of creditors. In contrast, if immediate relief is granted as prayed herein, asset values will be preserved. Under these circumstances, granting relief on an emergency basis is both necessary and appropriate.

**(d) Prospects of Reorganization**

Debtor is confident that it can emerge as a reorganized Debtor. It has a number of contractors lined up and is confident that it can obtain more contracts to generate the funds necessary to propose a feasible reorganization plan.

**(e) Whether The Employees Are Insiders**

None of the employees identified on **Exhibit "1"** are insiders of the Debtor. Marilyn M. Adjangba, who is the Debtor's Chief Executive Officer, is an insider of the Debtor. Ms. Adjangba is a 1099 independent contractor, who receives a monthly gross compensation of $4,000, which is paid bi-weekly at $2,000. Mr. Adjangba does not have any other source of income. She will follow the compensation guidelines under Local Bankruptcy Rule 2014-1(a)(3) before she is permitted to receive any compensation from the Debtor.

**(f) Whether the Employees' Claims are Within the Limits Established by 11 U.S.C. § 507**

As outlined in Exhibit "1", and attached hereto, each employee's claims are below the limits established by 11 U.S.C. § 507. *See* **Exhibit "1"** attached to Adjangba Declaration.

**(g) The Payment Will Not Render The Estate Administratively Insolvent.**

Debtor has sufficient funds on hand to pay its employees. Debtor currently has a balance of approximately $8,000 and expects to receive approximately $3,000 to $5,000 by tomorrow, August 17, 2021.

## IV. CONCLUSION

Based upon the foregoing, Debtor respectfully requests that the Court grant the relief prayed for herein.

Dated: 8/16/2021                     LAW OFFICES OF MICHAEL JAY BERGER

By: /s/ Michael Jay Berger
Michael Jay Berger
*Proposed* Counsel for Debtor and Debtor-in-Possession, Spectrum Link, Inc.

## DECLARATION OF MARILYN M. ADJANGBA

I, Marilyn M. Adjangba, declare and state as follows:

1. I am the Chief Executive Officer of Spectrum Link, Inc., the debtor and debtor-in-possession in the above-captioned matter (the "Debtor" or the "Firm"). I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2. I make this declaration in support of Debtor's Emergency Motion for Order Authorizing Interim Use of Cash Collateral (the "Motion").

3. Spectrum Link, Inc. was started in October 2013 by Bernard S. Mayfield, who passed away in April 2021 from Covid-19. Debtor is a leading internet service provider that offers custom internet services throughout the country, including unique temporary broadband service to those requiring temporary internet connections. It also provides installation services in many of the places that "wired" providers cannot reach, and its superior broadband service is backed by the fact installation process and copper-free wireless infrastructure. Debtor offers its customers a 24/7 care. Spectrum Link offers registered broadband link-owners 100% independent ownership of their broadband license, links and equipment.

4. The major event that precipitated the filing of Debtor's Chapter 11 bankruptcy case was the passing of Mr. Mayfield in April 2021, as a result of which the Debtor's operation was negatively impacted, resulting in Debtor's inability to pay the monthly obligations to various tower owners pursuant to the licensing agreements, the monthly obligations for the office space, among others.

5. The Covid-19 pandemic has negatively impacted the country's economy and devastated certain sectors of the economy. Debtor's operations have been impacted by the pandemic as well. Debtor's principal, Mr. Mayfield passed away in April 2021 from Covid-19. However, Debtor is confident that it can emerge as a reorganized Debtor. It has a number of contractors lined up and is confident that it can obtain more contracts to generate the funds necessary to propose a feasible reorganization plan.

6.  A true and correct list of Debtor's employees is attached hereto as <u>Exhibit-1</u>. All the employees that are identified on Exhibit "1" are still employed by the Debtor.

7.  Debtor depends on its staff to carry on the day-to-day operations of the Debtor who in turn rely on the Debtor to support themselves and/or their families and are unlikely to continue working for the Debtor, if not paid. The Debtor's business is run, managed, and operated by its employees at the present time. These employees help with the day-to-day operation of the business, which includes providing installation and supervision labor. These employees are an essential part of the Debtor's day-to-day operation. Without them, the Debtor cannot operate.

8.  It is the Debtor's opinion that payment of pre-petition wages is necessary to enable the workers to pay their personal living expenses, and to retain their goodwill and prospective services. In contrast, if such wages are not immediately paid, the Debtor believes that some of the employees will terminate their employment with the Debtor and seek other employment opportunities. If this occurs, revenue levels will decline precipitously, especially if the Debtor's employees quit, reducing the value of the estate's assets and impairing the rights of creditors. In contrast, if immediate relief is granted as prayed herein, asset values will be preserved. Under these circumstances, granting relief on an emergency basis is both necessary and appropriate.

9.  Debtor is confident that it can emerge as a reorganized Debtor. It has a number of contractors lined up and is confident that it can obtain more contracts to generate the funds necessary to propose a feasible reorganization plan.

10. None of the employees identified on **Exhibit "1"** are insiders of the Debtor. I am the Debtor's Chief Executive Officer and an insider of the Debtor. I am a 1099 independent contractor and receive a monthly gross compensation of $4,000, which is paid bi-weekly at $2,000. I do not have any other source of income. I will follow the compensation guidelines under Local Bankruptcy Rule 2014-1(a)(3) before I am permitted to receive any compensation from the Debtor.

11. Each employee pre-petition wage claim is below the limits established by 11 U.S.C. § 507.

12. Debtor has sufficient funds on hand to pay its employees. Debtor currently has a balance of approximately $8,000 and expects to receive approximately $3,000 to $5,000 by tomorrow, August 17, 2021.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on August 16, 2021 in Downey, California.

By: _____
Marilyn M. Adjangba
Chief Executive Officer of Spectrum Link, Inc.

**EXHIBIT-1**

# Run Payroll: Twice a Month #3

Review and Submit

**$5,291.30**
TOTAL PAYROLL COST

**$3,941.32**
NET PAY

**$973.97**
EMPLOYEE

**$376.01**
EMPLOYER



Employees will be paid by direct deposit, but the payment will be received on Tuesday, Aug 17 instead of Monday, Aug 16. Switch to paper checks?

**Pay period:** 07/25/2021 to 08/09/2021    **Pay date:** Monday, Aug 16

| EMPLOYEE | PAY METHOD | TOTAL HOURS | TOTAL PAY | EMPLOYEE TAXES | NET PAY | COMPARE T |
|---|---|---|---|---|---|---|
| Ashford, Aaron A | Direct deposit | 86.67 | $1,200.00 | $264.10 | $935.90 | |
| Nieto, Angel | Direct deposit | 74.40 | $1,502.17 | $319.32 | $1,182.85 | |
| Torres, Fernando | Direct deposit | 88.03 | $2,213.12 | $390.55 | $1,822.57 | |
| TOTAL | | 249.10 | $4,915.29 | $973.97 | $3,941.32 | |

Back

Preview payroll details

Submit payroll

# Run Payroll: Twice a Month - correct

 

Review and Submit

**$3,588.32**
TOTAL PAYROLL COST

| $2,770.79
NET PAY

| $562.54
EMPLOYEE

| $254.99
EMPLOYER



Pay period: 08/01/2021 to 08/14/2021     Pay date: Tuesday, Aug 17

| EMPLOYEE | PAY METHOD | TOTAL HOURS | TOTAL PAY | EMPLOYEE TAXES | NET PAY | COMPA |
|---|---|---|---|---|---|---|
| Lane, Chris | Direct deposit | 86.67 | $1,250.00 | $180.83 | $1,069.17 | |
| Trachtenberg, Ross | Direct deposit | 86.67 | $2,083.33 | $381.71 | $1,701.62 | |
| TOTAL | | 173.33 | $3,333.33 | $562.54 | $2,770.79 | |

Back

Preview payroll details

Submit payroll