MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:    (310) 271-6223
Facsimile:    (310) 271-9805
E-mail:    michael.berger@bankruptcypower.com

*Proposed* Counsel for Debtor and Debtor-in-Possession,
Spectrum Link, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SPECTRUM LINK, INC.,<br><br>   Debtor and Debtor-in-Possession. | CASE NO.: 2:21-bk-16403-VZ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MARILYN M. ADJANGBA AND MICHAEL JAY BERGER IN SUPPORT THEREOF**<br><br>**[LBR 2081-1 and LBR 9075]**<br><br>Hearing Scheduled For:<br>Date: August 17, 2021<br>Time: 1:00 p.m.<br>Place: Courtroom 1368 **[remotely via phone]**<br>   255 E. Temple Street, 13th Floor<br>   Los Angeles, CA 90012<br><br>Follow Judge Zurzolo's Appearance by Phone Procedures at https://www.cacb.uscourts.gov/judges/honorable-vincent-p-zurzolo.<br><br>Toll-Free Conference Line: (877) 411-9748<br>Passcode: 5919677 |

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MARILYN M. ADJANGBA AND MICHAEL JAY BERGER IN SUPPORT THEREOF

**TO THE HONORABLE VINCENT P. ZURZOLO, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA, THE OFFICE OF THE UNITED STATES TRUSTEE, TO THE SECURED CREDITORS, TO THE TWENTY LARGEST UNSECURED CREDITORS, AND TO ALL OTHER INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

Spectrum Link, Inc., the Debtor and Debtor-in-Possession ("Debtor") moves this Court for an order authorizing it to use the cash collateral of its secured creditors, the Employment Development Department ("EDD") and The 3250 Wilshire Blvd. Partners ("3250 Wilshire"), (collectively with EDD to be referred to as the "Secured Creditors")[1] (the "Motion").

In order to effectively reorganize, Debtor must be able to use the cash collateral of its Secured Creditors in order to pay the reasonable expenses it incurs during the ordinary course of its business. The Debtor requests authority from this court to approve interim use of cash collateral to pay the necessary payroll, payroll taxes, insurance, utilities, rent, and other necessary business expenses as set forth in the attached cash collateral budget, and incorporated herein as **Exhibit-1,** to continue its business operation without any interruption. Use of the cash collateral as proposed by the Debtor will allow the Debtor to continue doing business, preserve the Debtor's assets for the benefit of the estate and the creditors, specifically the Secured Creditors. The Debtor has a reasonable prospect of reorganizing through chapter 11. The continued use of cash collateral to ensure no interruption of Debtor's business will further allow Debtor to emerge as a reorganized Debtor.

**PLEASE TAKE NOTICE** that the hearing on the Motion will take place on August 17, 2021 at 1:00 p.m. in Courtroom 1368 of the above-referenced Bankruptcy Court. Appearances

---

[1] [1] The information for secured creditors was obtained by conducting a UCC Search on the California Secretary of State website at: https://bizfileonline.sos.ca.gov/search/ucc. The Judgment Lien of The 3250 Wilshire Blvd. Partners was recorded on May 23, 2021, which falls within the 90-day preference period and is subject to an avoidance action under 11 U.S.C. Section 547(b). Employment Development Department filed a total of 4 tax liens against the Debtor. One of the tax liens filed on June 11, 2021 for $3,418.67, falls within the 90-day preference period, and is subject to an avoidance action pursuant to 11 U.S.C. Section 547(b).

may be made in person or telephonically.  See Judge Zurzolo's telephonic appearance procedures

on the first page of the Motion.

**PLEASE TAKE FURTHER NOTICE** that any opposition to the Motion is <u>due no later</u>

<u>than 11:00 a.m. on August 17, 2021</u>.

This motion is made on the basis of the Declarations of Marilyn M. Adjangba and

Michael Jay Berger, the within Points and Authorities, and on such other evidence as the Court

elects to consider prior to or at the hearing on this matter.

WHEREFORE, Debtor asks that this Court authorize interim use of Secured Creditors'

cash collateral, as set forth herein, and for any other relief deemed necessary and proper.


LAW OFFICES OF MICHAEL JAY BERGER


Dated:  8/16/2021        By: _____

Michael Jay Berger
Proposed Counsel for Debtor and Debtor-in-Possession,
Spectrum Link, Inc.

## MEMORDANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

#### A. General Description of the Debtor

Spectrum Link, Inc. was started in October 2013 by Bernard S. Mayfield, who passed away in April 2021 from Covid-19. Debtor is a leading internet service provider that offers custom internet services throughout the country, including unique temporary broadband service to those requiring temporary internet connections. It also provides installation services in many of the places that "wired" providers cannot reach, and its superior broadband service is backed by the fact installation process and copper-free wireless infrastructure. Debtor offers its customers a 24/7 care. Spectrum Link offers registered broadband link-owners 100% independent ownership of their broadband license, links and equipment.

#### B. Events Precipitating the Chapter 11 Bankruptcy Filing

The major event that precipitated the filing of Debtor's Chapter 11 bankruptcy case was the passing of Mr. Mayfield in April 2021, as a result of which the Debtor's operation was negatively impacted, resulting in Debtor's inability to pay the monthly obligations to various tower owners pursuant to the licensing agreements, the monthly obligations for the office space, among others.

#### C. Prospects of Reorganization

The Covid-19 pandemic has negatively impacted the country's economy and devastated certain sectors of the economy. Debtor's operations have been impacted by the pandemic as well. Debtor's principal, Mr. Mayfield passed away in April 2021 from Covid-19.  However, Debtor is confident that it can emerge as a reorganized Debtor. It has a number of contractors lined up and is confident that it can obtain more contracts to generate the funds necessary to propose a feasible reorganization plan.

### II.    SECURED CREDITORS

The following creditors have an interest secured by Debtor's assets:

4

1. Employment Development Department ("EDD"): State Tax Lien filed on 7/21/2020 for $1,061.63;

2. EDD: State Tax Lien filed on 9/2/2020 for $1,182.73;

3. EDD: State Tax Lien filed on 10/30/2020 for $1,873.79;

4. EDD: State Tax Lien filed on 6/11/2021 for $3,418.67[2]; and

5. The 3250 Wilshire Blvd. Partners: Notice of Judgment Lien filed on 5/23/2021 for $25,147.39[3].

The Debtor proposes that it be authorized to use the cash collateral of its Secured Creditors for the purpose of paying the reasonable, necessary and ordinary expenses of operating the business.

## III.
### A. THE USE OF THE CASH COLLATERAL FOR OPERATIONS SHOULD BE AUTHORIZED IN ACCORDANCE WITH THE BUDGET

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e). Pursuant to *United States v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien. **Under this holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value under the Debtors' proposed usage of cash collateral.** *Timbers*, 108 S. Ct at 633; *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D.Mass. 1990) (So long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is

---

[2] Employment Development Department filed a total of 4 tax liens against the Debtor.  One of the tax liens filed on June 11, 2021 for $3,418.67, falls within the 90-day preference period, and is subject to an avoidance action pursuant to 11 U.S.C. Section 547(b).

[3] The Judgment Lien of The 3250 Wilshire Blvd. Partners was recorded on May 23, 2021, which falls within the 90-day preference period and is subject to an avoidance action under 11 U.S.C. Section 547(b).

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM
OF POINTS AND AUTHORITIES; DECLARATIONS OF MARILYN M. ADJANGBA AND MICHAEL JAY BERGER IN SUPPORT THEREOF

adequately protected); *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (Since value of the collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments); *In re Century Inv. Fund VII, Ltd. Partnership*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (Where value appears to be stable, creditor is not entitled to adequate protection payments); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under *Timbers*, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (Secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D.Cal. 1988); *In re Elmore*, 94 B.R. 670 (Bankr. C.D. Cal. 1988). Alternatively, a debtor can make an adequate protection showing even where the collateral is declining in value, as long as the creditor's interest therein is protected by a reasonable equity cushion. *See, In re Mellor*, 734 F. 2d 1396 (9th Cir. 1984); *In re Harrington & Richardson, Inc.*, 48 B.R. 431 (Bankr. D.Mass. 1985); *In re Mccombs Properties Vi, Ltd.*, 88 B.R. 261 (Bankr. C.D.Cal. 1988).

In order to effectively reorganize, Debtor must be able to use the cash collateral of its Secured Creditors in order to pay the reasonable expenses it incurs during the ordinary course of its business. The Debtor requests authority from this court to approve interim use of cash collateral to pay the necessary payroll, payroll taxes, insurance, utilities, rent, and other necessary business expenses as set forth in the attached cash collateral budget, and incorporated herein as **Exhibit-1,** to continue its business operation without any interruption. Use of the cash collateral as proposed by the Debtor will allow the Debtor to continue doing business, preserve the Debtor's assets for the benefit of the estate and the creditors, specifically the Secured Creditors.

If the Debtor's access to the cash collateral is interrupted for even a brief period of time, the consequences would be disastrous for the creditors of the estate. The Debtor would be unable to operate its business without any interruption. The employees and the clients would leave and the business would shut down, making its value zero. As such, it is in the best interests

of the estate and its creditors for the Debtor to be authorized to use the cash collateral to continue to operate and maintain its law practice business.

Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, the needs of the business may fluctuate. Therefore, the Debtor requests Court authority to deviate from the total expenses contained in the Budget by no more than 15% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order or the express written consent of Secured Creditors in advance unless such expenditure is an emergency and then the Debtor shall notify the Secured Creditors of the expenditures immediately.

## B. SECURED CREDITORS' INTERESTS ARE ADEQUATELY PROTECTED BY THE CONTINUED OPERATION OF THE DEBTOR

Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the Court determines that the secured creditor is adequately protected. *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 (9th Cir. 1984). See also *O'Connor, supra,* 808 F.2d at 1398; *McCombs Properties VI, Ltd. v. First Texas Savings Association (In re McCombs Properties VI, Ltd.),* 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988). In ordinary circumstances, a secured creditor is to be protected against a decrease in value which directly affects the secured creditor's interest in its collateral. See *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 630, (1988); Section 506(a) of the Bankruptcy Code "limit(s) the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs, supra,* 88 B.R. at 266.

As a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral. *In re Stein, supra,* 19 B.R. at 460; see also *McCombs, supra,* 88 B.R. at 267.

7

Here, as mentioned above, EDD and The 3250 Wilshire Blvd. Partners are the only secured creditors that have a security interest in the assets of the Debtor. Their interests are safeguarded by the value of the Debtor's assets and the continued operation of the Debtor. Debtor has no reason to believe that value of cash, the accounts receivable, and other tangible property are declining in value.

Debtor is not offering any monthly adequate protection payments to EDD at this time because EDD's claim amount is nominal and its interested is adequately protected by Debtor's current cash, the receivables, and the continued operation of Debtor's business. EDD's state tax liens total $7,536.82. Debtor will pay EDD through the plan in full within 5-years from the petition date at the applicable interest rate.

The notice of judgment lien of The 3250 Wilshire Blvd. Partners was filed within the 90-day preference and is subject to an avoidance per 11 U.S.C. Section 547(b). As such, at this time, the Debtor is not offering any monthly adequate protection payments to The 3250 Wilshire Blvd. Partners.

The use of cash collateral is essential to continue the ordinary maintenance and operations of Debtor's business. Without the use of the cash collateral, the Debtor will be unable to pay will be unable to pay the necessary payroll and payroll taxes, insurance, on-going costs, rent, utilities and other necessary business expenses that arise in connection with the operation of its type of business. As such, unless the Debtor is permitted to use the cash collateral, the value of the business will rapidly diminish.

## C. IN DETERMINING ADEQUATE PROTECTION, THE COURT SHOULD PROMOTE REORGANIZATION

In determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, supra, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of

Chapter 11. Hence, the Debtor's efforts are not only to be
encouraged, but also their efforts during the administration of the
proceeding are to be measured in light of that quest. Because the
ultimate benefit to be achieved by a successful reorganization
inures to all the creditors of the estate, a fair opportunity must be
given to the Debtors to achieve that end. Thus, while interests of
the secured creditor whose property rights are of concern to the
court, the interests of all other creditors also have bearing upon the
question of whether use of cash collateral shall be permitted during
the early stages of administration.

808 F.2d at 1937.

In order to promote Debtor's reorganization, the Court should grant the relief requested

herein. The Debtor has demonstrated herein that the use of the cash collateral as proposed by the

Debtor will preserve assets and operations of the Debtor for the benefit of this estate and the

creditors, including the EDD and the 3250 Wilshire Blvd Partners. Indeed, a successful

reorganization depends upon the use of cash collateral as proposed herein.

### IV. CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court grant the relief

herein requested, authorizing interim use of cash collateral on the terms and conditions described

in the Motion and the exhibits thereto and granting such other and further relief as is just and

proper under the circumstances.

Dated:  8/16/2021          LAW OFFICES OF MICHAEL JAY BERGER

By: _____
      MICHAEL JAY BERGER
      *Proposed* Counsel for Debtor and Debtor-in-
      Possession, Spectrum Link, Inc.

9

## DECLARATION OF MARILYN M. ADJANGBA

I, Marilyn M. Adjangba, declare and state as follows:

1.      I am the Chief Executive Officer of Spectrum Link, Inc., the debtor and debtor-in-possession in the above-captioned matter (the "Debtor" or the "Firm").  I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      I make this declaration in support of Debtor's Emergency Motion for Order Authorizing Interim Use of Cash Collateral (the "Motion").

3.      On August 11, 2021, the Debtor filed its Chapter 11 bankruptcy petition.  This is the Debtor's first voluntary bankruptcy petition filing.

4.      Spectrum Link, Inc. was started in October 2013 by Bernard S. Mayfield, who passed away in April 2021 from Covid-19. Debtor is a leading internet service provider that offers custom internet services throughout the country, including unique temporary broadband service to those requiring temporary internet connections. It also provides installation services in many of the places that "wired" providers cannot reach, and its superior broadband service is backed by the fact installation process and copper-free wireless infrastructure.  Debtor offers its customers a 24/7 care. Spectrumlink offers registered broadbank link-owners 100% independent ownership of their broadband license, links and equipment.

5.      The major event that precipitated the filing of Debtor's Chapter 11 bankruptcy case was the passing of Mr. Mayfield in April 2021, as a result of which the Debtor's operation was negatively impacted, resulting in Debtor's inability to pay the monthly obligations to various tower owners pursuant to the licensing agreements, the monthly obligations for the office space, among others.

6.      The Covid-19 pandemic has negatively impacted the country's economy and devastated certain sectors of the economy. Debtor's operations have been impacted by the pandemic as well.  Debtor's principal, Mr. Mayfield passed away in April 2021 from Covid-19. However, Debtor is confident that it can emerge as a reorganized Debtor. It has a number of

contractors lined up and is confident that it can obtain more contracts to generate the funds necessary to propose a feasible reorganization plan.

7.      The Debtor proposes that it be authorized to use the cash collateral of its Secured Creditors for the purpose of paying the reasonable, necessary and ordinary expenses of operating the business pursuant to the proposed Budget, a copy of which is attached hereto as **Exhibit-1.** Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the business, the needs of the business may fluctuate. Therefore, the Debtor requests Court authority to deviate from the total expenses contained in the Budget by no more than 15% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order or the express written consent of Secured Creditors in advance unless such expenditure is an emergency and then the Debtor shall notify the Secured Creditors of the expenditures immediately.

8.      If the Debtor's access to the cash collateral is interrupted for even a brief period of time, the consequences would be disastrous for the creditors of the estate. The Debtor would be unable to operate its business without any interruption. The employees and the clients would leave and the business would shut down, making its value zero. As such, it is in the best interests of the estate and its creditors for the Debtor to be authorized to use the cash collateral to continue to operate and maintain its law practice business.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on August 16, 2021 in Downey, California.

By:_____
        Marilyn M. Adjangba

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF MARILYN M. ADJANGBA AND MICHAEL JAY BERGER IN SUPPORT THEREOF

## DECLARATION OF MICHAEL JAY BERGER

I, Michael Jay Berger, declare and state as follows:

1.     I am an Attorney at Law, licensed to practice before all of the courts in the State of California, and in the United States District Court for the Central District of California.  I am the sole owner of the Law Offices of Michael Jay Berger ("Applicant").

2.     I am the proposed bankruptcy counsel for Spectrum Link, Inc., the Debtor and Debtor-in-Possession (the "Debtor").

3.     I make this declaration in support of Debtor's Emergency Motion for Order Authorizing Interim Use of Cash Collateral (the "Motion").

4.     The UCC search results reflect the following filings:

-     Employment Development Department ("EDD"): State Tax Lien filed on 7/21/2020 for $1,061.63;

-     EDD: State Tax Lien filed on 9/2/2020 for $1,182.73;

-     EDD: State Tax Lien filed on 10/30/2020 for $1,873.79;

-     EDD: State Tax Lien filed on 6/11/2021 for $3,418.67[4]; and

-     The 3250 Wilshire Blvd. Partners: Notice of Judgment Lien filed on 5/23/2021 for $25,147.39[5].

5.     Debtor is not offering any monthly adequate protection payments to EDD at this time because EDD's claim amount is nominal and its interested is adequately protected by Debtor's current cash, the receivables, and the continued operation of Debtor's business. EDD's state tax liens total $7,536.82. Debtor will pay EDD through the plan in full within 5-years from the petition date at the applicable interest rate.

---

[4] Employment Development Department filed a total of 4 tax liens against the Debtor.  One of the tax liens filed on June 11, 2021 for $3,418.67, falls within the 90-day preference period, and is subject to an avoidance action pursuant to 11 U.S.C. Section 547(b).

[5] The Judgment Lien of The 3250 Wilshire Blvd. Partners was recorded on May 23, 2021, which falls within the 90-day preference period and is subject to an avoidance action under 11 U.S.C. Section 547(b).

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM
OF POINTS AND AUTHORITIES; DECLARATIONS OF MARILYN M. ADJANGBA AND MICHAEL JAY BERGER IN SUPPORT THEREOF

6.      The notice of judgment lien of The 3250 Wilshire Blvd. Partners was filed within the 90-day preference and is subject to an avoidance per 11 U.S.C. Section 547(b).  As such, at this time, the Debtor is not offering any monthly adequate protection payments to The 3250 Wilshire Blvd. Partners.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on August 16, 2021 in Beverly Hills, California.

By: _____
Michael Jay Berger

NOTICE OF MOTION AND DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM
OF POINTS AND AUTHORITIES; DECLARATIONS OF MARILYN M. ADJANGBA AND MICHAEL JAY BERGER IN SUPPORT THEREOF

# EXHIBIT-1

6-MONTH PROJECTED INCOME AND EXPENSES

| | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | Jan-22 |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Internet Provider/Wireless Sales | $64,000.00 | $76,000.00 | $77,000.00 | $85,000.00 | $85,000.00 | $85,000.00 |
| **Gross Income** | $64,000.00 | $76,000.00 | $77,000.00 | $85,000.00 | $85,000.00 | $85,000.00 |
| | | | | | | |
| **Expenses** | | | | | | |
| Equipment for projects, which includes, radios, mounts and material | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 |
| 1099 Independent Contractors | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 | $13,500.00 |
| W2 Employees | $16,630.00 | $16,630.00 | $16,630.00 | $16,630.00 | $16,630.00 | $16,630.00 |
| Auto Repairs and Maintenance | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Gasoline allowances | $900.00 | $900.00 | $900.00 | $900.00 | $900.00 | $900.00 |
| Advertisement | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Google Pay Per Click | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Office Supplies | $205.00 | $205.00 | $205.00 | $205.00 | $205.00 | $205.00 |
| Crown Castle Fiber | | $7,230.40 | $7,230.40 | $7,230.40 | $7,230.40 | $7,230.40 |
| Rent - One Wilshire - roof top | | $6,850.00 | $6,850.00 | $6,850.00 | $6,850.00 | $6,850.00 |
| Rent for 18321 Venture Blvd., Los Angeles, CA 91356 (roof top) | | $3,682.00 | $3,682.00 | $3,682.00 | $3,682.00 | $3,682.00 |
| Rent 15260 Ventura Blvd Los Angeles CA (american tower) | | $1,860.00 | $1,860.00 | $1,860.00 | $1,860.00 | $1,860.00 |
| 1515 Broadway New York, NY | | $1,141.80 | $1,141.80 | $1,141.80 | $1,141.80 | $1,141.80 |
| Rent for 375 Peral St., New York, NY | | $3,276.35 | $3,276.35 | $3,276.35 | $3,276.35 | $3,276.35 |
| Rent for Call Center at 3250 Wilshire Blvd, Los Angeles, CA 90010 (Roof Top Agreement) | | $6,900.00 | $6,900.00 | $6,900.00 | $6,900.00 | $6,900.00 |
| Employees Prepaid Cell Phone service | $122.00 | $122.00 | $122.00 | $122.00 | $122.00 | $122.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| General Liability Insurance | $4,787.00 | $4,787.00 | $4,787.00 | $4,787.00 | $4,787.00 | $4,787.00 |
| Workers Compensation Insurance | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Frequency License | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Federal Income Taxes | $1,908.00 | $1,908.00 | $1,908.00 | $1,908.00 | $1,908.00 | $1,908.00 |
| State Income Taxes | $423.00 | $423.00 | $423.00 | $423.00 | $423.00 | $423.00 |
| Local Income Taxes | $423.00 | $423.00 | $423.00 | $423.00 | $423.00 | $423.00 |
| US Trustee's Quarterly Fees | | | $650.00 | | | $650.00 |
| General Bankruptcy Counsel's Legal Fees (Upon Court's Approval; Debtor's counsel is agreeable to payment plan if Debtor does not have the funds available to pay counsel when the fee application is approved) | | | | $5,000.00 | $5,000.00 | |
| Total Expenses | $44,598.00 | $75,538.55 | $76,188.55 | $80,538.55 | $80,538.55 | $76,188.55 |
| Net Income | $19,402.00 | $461.45 | $811.45 | $4,461.45 | $4,461.45 | $8,811.45 |